UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY SHAWN CARVER,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:24-cv-01041-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 15) |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 10).

Plaintiff presents the following issue: "Whether the ALJ's mental RFC determination is supported by substantial evidence and free from legal error where the ALJ improperly discounted the opinion of consultative examiner, Aloine Butler, Psy.D." (ECF No. 15, p. 8).

Having reviewed the record, administrative transcript, the parties' briefs, and the applicable law, the Court finds as follows. [1]

---

[1] Plaintiff did not file an optional reply brief, and the time to file one has expired.

I.     ANALYSIS

    A.     **Summary of Parties' Arguments**

Plaintiff argues that the ALJ's formulation of the mental RFC is not supported by substantial evidence and is the product of legal error because the ALJ improperly discounted the opinion of a consultative examiner, Dr. Aloine Butler. (ECF No. 15, p. 8). Defendant counters that the ALJ properly addressed Butler's opinion.[2] (ECF No. 17, pp. 4-10).

    B.     **Legal Standards**

As Plaintiff ultimately challenges the RFC, the following standards apply. A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); see also 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

Regarding the challenge to the ALJ's discussion of Butler's opinion, the following standards apply. Because Plaintiff applied for benefits in 2020, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (A.R. 17). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness.

---

[2] Defendant also argues that any error here was harmless. However, as explained in this order, the ALJ properly addressed Butler's opinion; thus, the Court need not address whether any error was also harmless.

20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

\\\

### C. Discussion

The Court begins with the reasons that the ALJ offered to formulate Plaintiff's RFC and to discount Butler's opinion.

Plaintiff's disability application alleged "disability beginning November 1, 2017," with December 31, 2020, being "the date of last insured." (A.R. 23). On September 1, 2021, after the date of last insured, Plaintiff visited Butler, a psychiatric consultative examiner, who conducted a mental examination of Plaintiff. (A.R. 1225). Following the exam, Butler issued a report, providing the following functional assessment:

> The claimant's ability to perform simple and repetitive tasks is unimpaired.
>
> The claimant's ability to perform detailed and complex tasks is unimpaired.
>
> The claimant's ability to accept instructions from supervisors is mildly impaired.
>
> The claimant's ability to interact with coworkers and the public is unimpaired.
>
> The claimant's ability to perform work activities on a consistent basis without special or additional instructions is unimpaired.
>
> The claimant's ability to maintain regular attendance and complete a normal workday/workweek without interruptions from the psychiatric condition is mildly impaired.
>
> The claimant's ability to deal with the usual stressors encountered in the workplace is mildly impaired.

(A.R. 1229).

After considering Butler's opinion and the rest of the record, the ALJ concluded that Plaintiff was not disabled. (A.R. 24). In the opinion, the ALJ formulated the following RFC for Plaintiff:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), except the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant could stand and/or walk for approximately six hours and sit for approximately six hours, in an eight-hour workday. The claimant could not climb ladders, ropes and scaffold and could occasionally climb stairs and ramps. The claimant could occasionally stoop, crouch, kneel and balance, as balance is defined by the Selective Characteristics of Occupations of the Dictionary of Occupational Titles (SCO-DOT). The claimant could not crawl. The claimant could occasionally reach overhead and frequently handle and finger with the bilateral upper extremities. The claimant could understand, remember and carry out simple instructions and tasks. The claimant

>could perform only low stress work, which is defined as requiring only occasional changes in a routine work setting, occasional changes in work duties, no work on a moving conveyor belt and no work requiring hourly quotas. The claimant could not perform work in near proximity to moving mechanical parts, nor work in high, unprotected places, as rated by SCO-DOT.

(A.R. 29).

Among other reasons, the ALJ provided the following rationale to support the mental limitations in the RFC.

>The objective medical evidence of record documents that the claimant's major depressive disorder is a severe impairment that affects the claimant's ability to do work. The claimant reported mental health symptoms beginning in 2020. He reported an accident in 2020 when he accidentally ran over someone with his diesel vehicle, resulting in a fatality. He reported an increase in depressive symptoms following that time. At the consultative examination in September 2020, the claimant endorsed symptoms of depression and fatigue. On the mental status exam, his attention was limited, but he was able to recite a minimum of 4 digits forward and three digits in reverse; he had some concentration limits, as he made one error spelling the word "world" in reverse; his mood was dysthymic; and his affect was concurrent with his mood. The claimant was assessed with major depressive disorder, recurrent moderate, and amphetamine use disorder severe in sustained remission. (Ex. B20F). The majority of the claimant's mental health treatment is after the date last insured of December 30, 2020, including the eventual diagnosis of additional mental health impairments, which were addressed above. The closest examination date to the date last insured is from September 2021 at an initial assessment. The claimant alleged depression, anxiety, crying, sadness, and isolating. The claimant had a GAD score of 18 and a PHQ score of 19. Upon examination, the claimant had a sad mood, but an otherwise normal or unremarkable mental examination. (Ex. B34F). While the claimant occasionally reported symptoms of anxiety or depression in a review of symptoms to his primary care provider, his primary care provider does not list depression or anxiety as a diagnosis during the alleged period of disability. (Ex. B37F). Despite this, I find that the claimant's depressive disorder is a severe impairment and I account for it by finding that the claimant can understand, remember and carry out simple instructions and tasks and should perform only low stress work, which is defined as requiring only occasional changes in a routine work setting, occasional changes in work duties, no work on a moving conveyor belt and no work requiring hourly quotas. Limitations to no[t] work in near proximity to moving mechanical parts, nor in high unprotected places, have also been assessed to address his mental health impairments.

(A.R. 32-33).

As for Butler's opinion, the ALJ found it "partially persuasive," providing the following

explanation for doing so:

> I considered the opinion of the psychiatric consultative examiner, Aloine Butler, Psy.D.. After the date last insured, Dr. Butler conducted a consultative examination. Dr. Butler opined that the claimant had only a mild limitation in accepting instructions from supervisors, maintaining attendance and completing a workweek, and dealing with work stress. (Ex. B22F). I find that this opinion is partially persuasive. Dr. Butler supported this opinion with an examination of the claimant and stated that the claimant's mild major depressive disorder, rule out manic depressive disorder, and rule out posttraumatic stress disorder caused the claimants limitations. (Ex, B22F). This is generally consistent with the medical and other evidence. While this opinion is outside the adjudication period, it is generally consistent with the medical evidence as a whole for the period under review. However, I provided some mental health limitations based on complaints, at times, of anxiety and depressive symptoms and complaints of pain. I find that the medical evidence does demonstrate depression, consistent with a limitation of performing simple, routine tasks. I further find that the claimant's depression causes a limit in dealing with work stress. However, I find Dr. Butler's other limitations, including accepting instructions from supervisors, maintaining attendance and completing a workweek to be [un]supported[3] by the evidence prior to the date last insured. The period documents some complaints of anxiety and depressive symptoms in the review of symptoms, but at other times no mental health symptoms are reported. (Ex. B37F). There was no active treatment during this period. Given the lack of mental health treatment prior to the date last insured, I find that degree of limitation to be supported by the record.

(A.R. 34-35).

Plaintiff argues that "[t]he restrictions assessed by Dr. Butler—particularly, his limitation in accepting instructions from supervisors and maintaining attendance and completing a workweek—were not accommodated by the RFC which the ALJ adopted." (ECF No. 15, p. 11). Defendant counters that the ALJ properly addressed Butler's opinion in formulating the RFC. (ECF No. 17, pp. 4-10). Upon review, the Court agrees with Defendant.

As an initial matter, it is important to note that the ALJ did not completely discount Butler's opinion, but instead found it partially persuasive. Regarding supportability, the ALJ found Butler "supported this opinion with an examination of the claimant and stated that the

---

[3] The ALJ's opinion states, "However, I find Dr. Butler's other limitations, including accepting instructions from supervisors, maintaining attendance and completing a workweek to be *supported* by the evidence prior to the date last insured." (A.R. 35) (emphasis added). From the context of the opinion, it appears that this is a typographical error and that the ALJ meant to say "unsupported." Notably, neither party argues the ALJ intended to say such limitations were supported.

claimant's mild major depressive disorder, rule out manic depressive disorder, and rule out posttraumatic stress disorder caused the claimants limitations." (A.R. 34). As to consistency, the ALJ noted that, "[w]hile this opinion is outside the adjudication period, it is generally consistent with the medical evidence as a whole for the period under review." (*Id.*).

Further, the ALJ provided even more limitations in the RFC than Butler's opinion "based on complaints, at times, of anxiety and depressive symptoms and complaints of pain." (*Id.*). Notably, Butler opined that Plaintiff's "ability to perform *detailed and complex tasks is unimpaired*." (A.R. 1229) (emphasis added). The ALJ noted that, despite Plaintiff's "primary care provider . . . not list[ing] depression . . . as a diagnosis during the alleged period of disability," the ALJ accounted for the depression, in part, "by finding that the claimant can understand remember and carry out *simple instructions and tasks*." (A.R. 32-33) (emphasis added); (A.R. 34-35 – "I find that the medical evidence does demonstrate depression, consistent with a limitation of performing simple, routine tasks.").

Moreover, the ALJ explained why it did not find "Butler's other limitations, including accepting instructions from supervisors, maintaining attendance and completing a workweek to be supported by the evidence prior to the date last insured." (A.R. 35). Importantly, the ALJ acknowledged that this period documented "some complaints of anxiety and depressive symptoms in the review of symptoms, but at other times no mental health symptoms are reported." (*Id.*). Further, "[t]here was no active treatment during this period." (*Id.*). In summary, the ALJ concluded that the rest of the record was inconsistent with these limitations and Plaintiff did not require a more restrictive RFC.

Plaintiff objects to the ALJ's rationale. First, Plaintiff argues that it was improper for the ALJ to discount Butler's opinion because the examination occurred after the date Plaintiff was last insured. Although records from outside of the alleged disability period can still be relevant, the ALJ properly contrasted the timing of Butler's examination in determining its persuasiveness as compared to the medical record and lack of treatment during the relevant period. *See Alvarez v. Comm'r of Soc. Sec.*, No. 1:20-CV-01207-SAB, 2022 WL 3108619, at *9 (E.D. Cal. Aug. 4, 2022) (noting that an "ALJ may accord less weight to medical opinions that do not relate to the

1   claimant's condition during the relevant disability period"); *Hensley v. Comm'r of Soc. Sec.*, No.
2   2:20-CV-1448-KJN, 2022 WL 891289, at *5 (E.D. Cal. Mar. 25, 2022) ("Here, the records pre-
3   dating plaintiff's onset date provide this court with little evidence of plaintiff's mental
4   impairments during the alleged disability period, given the year-long gap in treatment preceding
5   April 2016 when plaintiff sought treatment for the January 2016 stabbing trauma."); *cf.*
6   *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of
7   treatment in his credibility determination.").

8   Next, Plaintiff accuses the ALJ of "impermissible 'cherry picking' of the evidence,"
9   namely, "in assessing the consistency of the opinion, the ALJ failed to consider that the opinion
10  of Dr. Butler was highly consistent with the opinion of Dr. Malone (who examined Plaintiff
11  within the relevant period)." (ECF No. 15, p. 13). True, an ALJ is not permitted to "selectively"
12  rely on evidence to find a claimant not disabled, while "ignor[ing]" evidence favorable to the
13  claimant. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). However, as Defendant
14  argues, the ALJ had no reason to compare Butler's opinion to Malone's opinion because the ALJ
15  generally discounted Malone's opinion. (ECF No. 17, pp. 8-9).

16  As noted above, Butler found Plaintiff either to be unimpaired, or at most, mildly impaired
17  in certain areas of functioning. Dr. Malone, a consultative examiner, found Plaintiff to be
18  moderately impaired in several areas, and the ALJ found the opinion to be "not fully persuasive."

> I considered the opinion of the consultative examiner, Molly Malone, Psy.D.. (Ex. B20F). Following a consultative examination of the claimant on September 7, 2020, Dr. Malone opined that the claimant is moderately impaired in his ability to perform detailed and complex tasks, moderately impaired in his ability to maintain regular attendance in the workplace, moderately impaired in his ability to perform work activities on a consistent basis, moderately impaired in the ability to perform work activities without special or additional supervision; moderately impaired in his ability to complete a normal workday or workweek without interruptions resulting from his psychiatric condition; mildly impaired in his ability to accept instructions from supervisors; moderately impaired in his ability to interact with coworkers and with the public; and moderately impaired in his ability to deal with the usual stresses encountered in competitive work environment. (Ex. B20F). I find that this opinion not fully persuasive. Dr. Malone supported her opinion with her examination of the claimant, finding the claimant's impairments were caused by his moderate major depressive disorder and amphetamine use disorder in sustained remission. (Ex. B20F). This opinion was based on a one-time

> examination of the claimant, and I find that this is not consistent with the objective medical evidence. The medical evidence for the period at issue shows only a few instances where the claimant reports anxiety or depression, and other times where he reports no anxiety. The claimant's primary care physician does not list depression as an impairment during the alleged period. (Ex. B37F). I find that the claimant does have a limitation in regard to detailed or complex tasks given his history of depression. Further, while I find that the claimant's depression causes difficulties with work stress, consistent with this opinion, I do not find that the evidence prior to the date last insured supports limitations accepting instructions from supervisors, interacting with the public and coworkers, maintaining attendance, or completing a workweek. Therefore, I find that this opinion is not fully persuasive a to the period prior to the date last insured.

(A.R. 33-34).

In short, the Court concludes that the ALJ did not improperly "cherry pick" the record by failing to find Butler's opinion more persuasive based on Malone's opinion that that the ALJ likewise discounted.

Plaintiff also argues that Butler's assessment was otherwise supported, mainly citing a few records of depression in Plaintiff's medical history. (ECF No. 15, pp. 13-14). However, the ALJ acknowledged such evidence in the record, but ultimately found that it did not warrant a more restrictive RFC. (*See, e.g.,* A.R. 35 – "The period documents some complaints of anxiety and depressive symptoms in the review of symptoms, but at other times no mental health symptoms are reported. There was no active treatment during this period. Given the lack of mental health treatment prior to the date last insured, I find that degree of limitation to be supported by the record."). While Plaintiff may wish for the ALJ to have provided more restrictions based on such evidence, this amounts, at most, to another rational interpretation of the evidence, which is not sufficient to conclude that the ALJ erred. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

In short, the Court concludes that the ALJ's review of Butler's opinion was supported by substantial evidence after consideration of the supportability and consistency factors.

\\\

\\\

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated:  **February 24, 2025**         /s/ Erica P. Grosjean
                                      UNITED STATES MAGISTRATE JUDGE